1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,          )    Case No. 17cr1680 JM
                                       )
13                     Plaintiff,      )
     v.                                )    ORDER DENYING MOTION TO
14                                     )    SUPPRESS EVIDENCE
     SONIA LETICIA SALAZAR-AYALA,      )
15                                     )
                       Defendants.     )
16 _____ )

17          This case involves the prosecution of Defendant Sonia Salazar-Ayala for

18   possession of controlled substances with the intent to distribute, and presents the

19   questions of whether the search of her vehicle and subsequent seizure of the controlled

20   substances at a U.S. Border Patrol checkpoint were constitutional.[1]

21          After careful consideration of the relevant court findings, as well as the evidence

22   presented at the June 13, 2019 suppression hearing, the court denies Defendant's motion

23   to suppress.

24   / / /

25

26          [1] In Defendant's motion papers, filed by her fourth court-appointed attorney, Defendant
     challenged the constitutionality of the search and seizure on the grounds of (1) the constitutionality of
27   the checkpoint, and (2) the reliability of the canine used in the search of Defendant's vehicle (Doc. 72-1,
     pp 5-7). Before and at the suppression hearing, Defendant withdrew both grounds as bases for her
28   suppression motion and, instead, representing herself, argued that (1) the canine did not, in fact, "alert"
     to Defendant's vehicle, and (2) the detention and search were without justification.

United States Border Patrol (Border Patrol) agents Gabriel Barragon (canine handler) and Armando Dominguez (primary officer) were called by the government to testify.[2] Each agent encountered Defendant shortly after 9:00 a.m. on May 27, 2017 at the Border Patrol Check Point on Highway 86 near Westmoreland, CA (checkpoint). Defendant was driving a Mazda as she entered the checkpoint. While still in the primary area of the checkpoint, Agent Barragon approached the vehicle with his canine, Pecky. Pecky had worked with Agent Barragon for her entire working life up to that point, about 8 years.  Pecky received continuous training and annual certification from the Border Patrol. She was trained to detect, through smell, both humans and narcotics, and was proven to be accurate and reliable.  Pecky would "alert" by closing her mouth, becoming rigid, and breathe heavily through her nose at a suspicious spot. On other occasions, she would claw and scratch at a suspicious area.

During the hearing, the court viewed video of Defendant's vehicle in both the primary and secondary areas of the checkpoint.  The video and Agent Barragon's testimony clearly reveal that Pecky alerted to the vehicle while it was in primary, as she became animated while sniffing under and around the vehicle. At one point, Agent Barragon testified she tried to jump onto the rear of the vehicle. Agent Barragon further testified that the reaction of Pecky was consistent with her training on how to alert to humans or narcotic contraband.

After observing Pecky's reaction, Agent Barragon signaled to primary officer Dominguez to refer Defendant to secondary. While driving into secondary, Pecky continued to strain to get to the vehicle and appeared to be in an agitated state.

Once in secondary, Defendant responded to Agent Barragon's routine questions, advising she had entered the United States earlier in the morning from Mexicali, that the agents had caused some damage to her vehicle during an earlier inspection upon entry

---

[2]Defendant neither testified nor presented any evidence other than her cross-examination of the agents.

17cr1680

into the United States, and that she consented to a search of her vehicle in secondary.[3]
Defendant also advised she had owned her vehicle for approximately two months.

Prior to the search of Defendant's vehicle in secondary, Defendant's daughter and a young child were escorted from the vehicle to the secondary office, although they were not in custody at this time. Pecky, the canine, entered the vehicle from the open driver's door and alerted to the vehicle's interior roof. Agent Barragon then removed Pecky from the vehicle and, using a density reader, determined the roof's reading (57) was higher than a "normal" roof reading (25-35). Agent Barragon then pulled a portion of the plastic head liner aside and observed a separate "after market" compartment. Agent Barragon also observed the vehicle's side air bags located on the floor near the rear of the vehicle rather than on the sides of the vehicle. Ultimately, narcotics were discovered in the vehicle.

## Discussion

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government and the reach of that protection extends to the investigatory stops of people and vehicles. United States v. Arvizu, 534 U.S. 266, 273 (2002). Generally, border searches enable the government to stop and examine persons and property crossing into the United States, and need not be justified by search warrant, probable cause, or individualized suspicion. United States v. Abbouchi, 502 F.3d 850, 855 (9th Cir. 2007). Such searches can be exceedingly thorough without violating the Fourth Amendment. See United States v. Flores-Montano, 541 U.S. 149, 152-53 (2004) (approving disassembly of a vehicle's fuel tank in the absence of any suspicion). Intentionally damaging a vehicle, however, requires reasonable suspicion (see, for example, United States v. Rivas, 157 F.3d 364 (5th Cir. 1998).

---

[3]In Defendant's cross-examination of Agent Barragon, she asked the agent to confirm that he threatened Defendant's legal status as a permanent resident if she did not consent to a vehicle search. Agent Barragon denied making such a statement. Although there was no such evidence introduced at the hearing, the court concludes the question of consent is moot given the court's analysis on the justification for the search.

17cr1680

The court judicially notices that the Highway 86 checkpoint is a long standing extended border search location where the Border Patrol's mission is to detect the smuggling of humans and narcotics. While its constitutionality is not in issue herein, extended border searches intrude more on the expectation of privacy and intrusiveness must be based on reasonable suspicion that (1) contraband was in the vehicle when it crossed the border, and (2) reasonable suspicion of contraband exists for the search. See United States v. Villasenor, 608 F.3d 467, 471 (9th Cir. 2010).

Defendant's argument in this case, however, is that the canine, Pecky, did not "alert" to her vehicle, thus the ensuing vehicle search and seizure of contraband were violative of her Fourth Amendment rights. Because Defendant's argument is essentially a factual one urging the court to find an absence of reasonable suspicion, the analysis focuses on the uncontroverted evidence of this case.

Clearly, the evidence in this case establishes Defendant had recently entered the United States from Mexico before arriving at the Highway 86 checkpoint. A reliable canine, Pecky, handled by her longtime partner, Agent Barragon, alerted to Defendant's vehicle while it was in primary and strained to follow the vehicle as it was slowly directed from primary to secondary. Once in secondary, Pecky again alerted to the vehicle and specifically, the interior roof area, according to Agent Barragon's testimony. Agent Barragon then used a density reader on the roof which recorded an excessively high reading. Only then was the edge of the plastic head liner pulled aside to allow Agent Barragon to visualize the specially built compartment, with the search further revealing narcotics.

By any standard, the search of Defendant's vehicle and seizure of contraband was justified under the Fourth Amendment. While it is true Defendant was able to point to minor discrepancies between a probable cause statement and the video clips observed by the court, such as Pecky entering the vehicle through the driver's door rather than the rear hatch, the differences were insignificant and do not alter the court's findings.

17cr1680

1  The contacts between the Border Patrol agents and Defendant were measured and
2  carefully calibrated to reflect the evolving circumstances and indicia of suspicion.
3  Incrementally, the contact began with a primary canine alert, evolved into a secondary
4  exterior canine alert, and was informed by the vehicle's recent entry into the United
5  States from Mexico. Next, a canine alert focused upon the vehicle's interior roof. Even
6  then, no unreasonable intrusion into or destruction of the vehicle occurred.  Rather, a
7  density reader was utilized to confirm the concern centered around the roof of the
8  vehicle.  Only after all of these developments did Agent Barragon pull back an edge of
9  the head liner and observe a non-factory compartment, which in turn led to the discovery
10  of narcotics.

11  After careful consideration, the court denies Defendant's motion to suppress the
12  narcotics seized from her vehicle.

13  IT IS SO ORDERED.

14  DATED:  June 18, 2019

15  _____
16  Hon. Jeffrey T. Miller
    United States District Judge

17
18
19
20
21
22
23
24
25
26
27
28